(R.D. 11278)

DORF INTERNATIONAL, INC., ET AL. v. UNITED STATES

(Decided March 21, 1967)

Sharretts, Paley & Carter (Howard C. Carter of counsel) for the plaintiffs.
Barefoot Sanders, Assistant Attorney General (Bernard J. Babb, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of these reappraisement appeals consists of certain bottle labelling machines which were manufactured in and exported from Canada by Universal Labelling Machines, Ltd., and entered at Detroit, Mich., and advanced in value upon appraisement. The case involves the dutiable status of an item deducted by the importer on entry in an amount equal to 15 and 16 per centum, respectively, of the manufacturer's list prices as a trade discount, and added back by the appraiser as a selling commission. The question presented is whether said item is part of the export value of the subject merchandise. There is no question that export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis of value of the involved merchandise, and that such merchandise is not on the final list of the Secretary of the Treasury in T.D. 54521. The plaintiff-importer contends that the item in dispute should be deducted from the dutiable value as a trade discount which was allowed to it by the manufacturer as the sole *selected purchaser* of the merchandise for exportation to the United States. Defendant disputes plaintiff's role in the transactions between it and the manufacturer, maintaining that plaintiff was the manufacturer's selling agent, by reason of which relationship the claimed deduction was properly disallowed as representing a selling commission.

The revelant valuation statute reads as follows:

§ 1401a. * * *

\* \* \* \* \* \* \*

(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Richard Thompson, office manager of Universal Labelling Machines, Ltd., the manufacturer and exporter of the involved merchandise, testified, among other things, as to the relationship existing between the exporter and the plaintiff-importer. His testimony in this regard

was corroborated by testimony given by Thomas R. Garde, the director of corporate relations of the plaintiff firm.

It appears from the evidence (documentary as well as testimonial) that Universal was engaged in, and prior to, 1963 in the business of manufacturing in Canada and selling both for domestic consumption and for exportation abroad various models of Phin strip stamp and body labelling machines, attachments, and parts. Since 1959 and continuing up through 1964 some 110 of these machines had been exported from Canada by Universal and imported into the United States by and through the plaintiff-importer and delivered to customers in the states. Prior to 1963 the dealings between the exporter and importer firms were not evidenced by any formal written agreement. However, at the end of 1962, the parties entered into a written contract (plaintiff's collective exhibit 3). Mr. Thompson testified that the contract merely embraced the terms on which the parties had previously engaged in business with the exception that the period for the settlement of accounts was extended in the written agreement from 30 to 45 days.

In general, the *modus operandi* pursued by the parties under the contract was as follows:

The plaintiff-importer would solicit and receive orders from customers in the states for a particular type of bottle labelling machine; plaintiff would then make written request of the manufacturer to purchase the machine as ordered by the customer and also transmit the customer's order to the manufacturer; the manufacturer would approve the order in writing and plaintiff would then forward its own written purchase order to the manufacturer; upon receipt of the plaintiff's purchase order the manufacturer then constructed the machine according to the customer's specifications and requirements, shipped the finished product directly to the customer in the states, and billed the plaintiff for the purchase price, which price plaintiff was obligated to pay irrespective of plaintiff's ability to collect from the customer. The price paid by the customer to plaintiff reflected the freight, brokerage, duty, and the so-called trade discount allowed the plaintiff; and was fixed by the plaintiff with the approval of the manufacturer in an amount which was never less than the manufacturer's prevailing list prices. The amount remitted by plaintiff to the manufacturer was the f.o.b. Toronto list price less 15 percent. This course of dealings extended to and included the transactions covering shipment of the merchandise before the court. And it was brought out in the testimony that Universal had solicited business directly in the states since 1959 with potential customers there and through its own sales force, and that as a result of such solicitation

a total of six sales of its bottle labelling machines had been made with a customer in the states.

The court is of the opinion that the role of the plaintiff in the involved transactions is to be determined from a construction of the nature of the written contract set forth in collective exhibit 3. Under this agreement plaintiff was given the right *to take orders for and to purchase for resale* in the states, was obligated to promote the interests of Universal and to secure to Universal the goodwill of purchasers and potential purchasers in the states; could only purchase against customers' orders approved by Universal at prices finally determined by Universal; and was obliged to permit Universal's salesmen and other representatives to engage in sales activities in plaintiff's territory. The agreement in question, while cast in terms of a buyer and seller relationship, in reality masks a principal-agent relationship between the contracting parties. Independence of dealings, necessary to support a buyer-seller relationship is entirely lacking here. The plaintiff-importer is not free to buy and sell on its own account as it chooses, or even to accumulate an inventory of Universal's machines and parts. Plaintiff cannot sell first and then buy to cover its contract, if it be so advised, but must first produce a customer and then get Universal's approval of the sale before plaintiff is permitted to purchase a product for resale to the customer. The aforementioned conditions of the contract are repugnant to a buyer-seller relationship, but at the same time are compatible with a principal-agent relationship between the contracting parties.

Neither is the court convinced that the vesting of indicia of ownership of the merchandise in the plaintiff-importer militates against plaintiff's status as an agent. The court views this arrangement as a measure employed by Universal to secure payment for merchandise which it ships out of the country of exportation into the United States.

For the reasons stated, the court holds that plaintiff has failed to offer any evidence to rebut the presumption of correctness attaching to the appraisement of the involved merchandise. As such, the court finds as facts:

1. That the imported merchandise consists of certain bottle labelling machines manufactured in and exported from Canada in January and May of 1963.

2. That the imported merchandise was appraised on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402 (b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), and does not appear on the final list of the Secretary of the Treasury in T.D. 54521.

3. That at the time of the exportation of the imported merchandise to the United States, such merchandise was freely sold in the principal

markets in Canada to all purchasers for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade at the manufacturer's list prices, net packed.

4. That plaintiff has failed to prove that it was a selected purchaser of the imported merchandise.

The court concludes as matters of law:

1. That plaintiff has failed to rebut the presumption of correctness attaching to the appraisement of the imported merchandise.

2. That export value as defined in section 1401a(b) is the proper basis of value of the imported merchandise.

3. That such values are represented herein by the appraised values.

Judgment will be entered accordingly.